**FILED**

January 13, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JW _____

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JORGE DURON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **No. 3:25-cv-00149-DCG** |
| | § | |
| **KINGS CAPITAL HOLDING LLC, dba** | § | |
| **KINGS CAPITAL NYC a Delaware** | § | |
| **Limited § Liability Company,** | § | |
| | § | |
| *Defendant.* | § | |

## <u>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Plaintiff Jorge Duron's "Motion for Default Judgement" ("Motion") (ECF No. 15), filed on September 18, 2025. For the reasons below, the Court **RECOMMENDS** the Plaintiff's Motion be **GRANTED.**

### I.     BACKGROUND

#### A.     Factual Background

On April 28, 2025, Plaintiff filed the lawsuit alleging that Defendant Kings Capital ("Defendant") contacting him on his cellphone without his consent.[1] Plaintiff received one phone call and five text messages to his personal phone number from Defendant soliciting business loans.[2] Defendant uses telemarketing to market its services.[3] Because Plaintiff did not provide prior express written consent to receive these text messages or phone call, Plaintiff alleges he was

---

[1] ECF. No. 1 at 6-7.
[2] ECF. No. 15 at 1.
[3] *Id.*

damaged both statutorily and emotionally.[4] Plaintiff asserts he found the calls "invasive of his privacy, annoying, and obnoxious."[5] Further, Plaintiff has maintained his personal cell phone number on the National Do-Not-Call Registry since 2008.[6] Also, Plaintiff's cell phone is used for residential purposes because Plaintiff does not have a landline at his home, and uses his personal cellphone for "personal, family, and household use… to listen to music, talk to friends and family, surf the internet, time food when cooking, navigation, and other non-business uses of his cell phone."[7]

Plaintiff filed his Complaint against Defendant on April 28, 2025, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and regulations promulgated thereunder, and Texas Business and Commerce Code ("TBCC") 302.101.[8] In his original complaint, Plaintiff requested "[an] award of $1,500 per text in statutory damages arising from the TCPA § 227(c) intentional knowing and willful violations jointly and severally against the corporation and individual for six (6) texts" and "[an] award of $5,000 per phone call in statutory damages arising from intentional violations of the Tex. Bus. & Com. Code 302.101 for six (6) texts."[9] Later, in his Motion for Default Judgement, Plaintiff asserted that "…he is entitled to $3,000 for six (6) violations of 227(c) at $500 per call, plus $9,000 for six (6) violations of 227(c) at $1,500 per call, $60,000 for six (6) violations of Tex. Bus. & Com. Code 302.101 at $5,000 per call or text, $405 in filing fees, and $150 in service fees for a total of $72,555."[10]

---

[4] *Id.* at 2.
[5] *Id.* at 2.
[6] ECF. No. 1 at 6.
[7] *Id.* at 10.
[8] *Id.*
[9] ECF. No. 1 at 12.
[10] ECF. No. 15 at 10.

However, after the Motion for Default Judgement, Plaintiff submitted "Affidavit of Jorge Duron in Support of Default Judgement Request" ("Affidavit") (ECF No. 25.), by which he corrected the requested amount to total $13,494.00.[11] Plaintiff came to this new calculation as follows: $5,000 in damages under Tex. Bus. & Com. Code 302.101, $500 in damages for violating TCPA 227(c) for one phone call, $7,500 in damages for "knowing and willful violations" under TCPA 227(c) for five text messages "after DNC request" was issued on March 11, 2025, $405 for filing fees, and $89 for service fees.[12]

### B.    Procedural History

Defendant was served with the summons and Complaint on May 6, 2025.[13] Defendant had twenty-one (21) days from service to answer. Fed. R. Civ. P. 12(a)(1)(A)(i).  Defendant did not timely answer.  Plaintiff filed a request for entries of default against Defendant on July 31, 2025.[14] Entry of default against Defendant was filed on August 15, 2025.[15] Plaintiff then filed this motion, moving for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure.[16] Defendant has not responded to the motion for default judgment or otherwise appeared in this matter.

### C.    Default Judgment Hearing

On November 5, 2025, the Court held a hearing on a Motion for Default pursuant to Federal Rule of Civil Procedure 55(b)(2)(B)(C) to analyze the basis for suing this Defendant and determine the damages sought.  At the hearing, Plaintiff submitted an affidavit updating his damages.

---

[11] ECF. No. 25
[12] *Id.* at 2.
[13] *See* ECF No. 3.
[14] *See* ECF No. 11.
[15] *See* ECF No. 13.
[16] *See* ECF No. 15.

Additionally, after statements from Plaintiff regarding the basis for suing this Defendant, the Court found that Plaintiff exercised due diligence when determining the proper Defendant.

## II.   STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. In ruling on a motion for default judgment, courts generally consider three issues: **(1) whether default judgment is procedurally proper, (2) whether the plaintiff's claims have substantive merit, and (3) the appropriate form and amount of relief**. *See United States v. 1998 Freightliner Vin No. 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813–14 (N.D. Tex. 2015).

Procedurally, a defendant defaults by failing to timely plead or otherwise respond to the complaint, and upon such a showing "by affidavit or otherwise," the clerk must enter default. Fed. R. Civ. P. 55(a); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After entry of default, the plaintiff may seek default judgment under Rule 55(b), though default judgment is a "drastic remedy" reserved for appropriate cases. *Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).

In assessing procedural propriety, courts consider the factors set forth in *Lindsey v. Prive Corp.* as follows: 1) whether material factual issues exist, 2) whether the plaintiff would suffer prejudice, 3) whether the grounds for default are clearly established, 4) whether the default resulted from excusable neglect, 5) the harshness of a default judgment, and 6) whether the court would likely set aside the default. 161 F.3d 886, 893 (5th Cir. 1998)*; see also Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024).

Regarding the merits, courts accept the plaintiff's well-pleaded factual allegations as true, except as to damages; default judgment is appropriate only if the pleadings provide a sufficient basis for relief. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also U.S. ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Finally, any default judgment must not differ in kind or exceed the amount demanded in the pleadings, Fed. R. Civ. P. 54(c), and the court may conduct a hearing to determine damages unless the amount sought is liquidated or capable of mathematical calculation. Fed. R. Civ. P. 55(b)(2); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III.    DISCUSSION

By his Motion, Plaintiff requests the Court to enter default judgment in his favor and against Defendant. Plaintiff seeks statutory damages sustained as a result of one call and five texts Defendants placed in violation of the TCPA and the Texas Business and Commerce Code.[17]  Pro se Plaintiff Jorge Duron has filed documents purporting to prove that he served Defendant with process on May 6, 2025.[18] Assuming, without yet deciding, that Plaintiff validly served Defendant, then Defendant's deadline to answer or otherwise respond to Plaintiff's Complaint expired on May 27, 2025. Defendant has failed to take any action in this case before the applicable deadline. Plaintiff completed the first step when the Clerk of Court entered a default against Defendant on August 15, 2025.[19]

### A.    Court's Jurisdiction

Before entering default judgment, the Court must confirm that it has subject-matter jurisdiction and personal jurisdiction over the defendant. *Guadian v. United Tax Defense LLC*, No.

---

[17] ECF. No. 1 at 6-7.
[18] *See* Proof of Service, ECF No. 3
[19] *See* ECF No. 13

EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024)(citing *Drew v. Lexington Consumer Advoc.*, No. 16-cv-00200-LB, 2016 WL 9185292, at *2 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advoc., LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016)). The Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's Texas Business & Commerce Code claims because they arise from the same nucleus of operative facts. *See* 28 U.S.C. § 1367(a).

There are two forms of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction exists only where a corporation is "fairly regarded as at home," typically its place of incorporation or principal place of business. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)); *Frank v. P.N.K. (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). Because Defendant is alleged to be incorporated in California, the Court lacks general personal jurisdiction.

Specific jurisdiction exists where the suit arises out of the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. Because the Texas long-arm statute extends to the limits of federal due process, the Court considers whether Defendant purposefully availed itself of Texas and whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019).

In this case, specific jurisdiction arises out of Defendant's intentional contacts with this forum. Plaintiff alleges that Defendant intentionally directed phone calls and texts into Texas ("Defendant targets Texas when marketing business loans and regularly conduct[s] business in

- 6 -

this District, including telephone solicitation").[20] Further, "Defendant personally directed the phone calls be sent to Texas residents with Texas area codes."[21] Therefore, the Court can exercise specific personal jurisdiction over the individual Defendants.[22]

### B.    Service of Process

Defendants were properly served. Under the Federal Rules of Civil Procedure, Defendant Kings Capital were properly served with process via registered agent on May 6, 2025[23], and therefore had the opportunity to respond but did not. Under FED. R. CIV. P. 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Here, on May 6, 2025, Plaintiff effected service under Rule 4(h)(1)(B). Plaintiff's process server served the Complaint, summons, and other initiating papers at Harvard Business Services Inc., 16192 Coastal Hwy, Lewes, DE 19958.[24] Harvard Business

---

[20] ECF. No. 1 at 2.

[21] ECF. No. 15 at 4.

[22] Exercising personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice. In assessing whether the exercise of personal jurisdiction is reasonable, the Fifth Circuit considers five factors: (1) the burden on the nonresident defendant of litigating in the forum; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. . *Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024)(citing *Rogers v. Health Ctr. of Lake City, Inc.*, 636 F. Supp. 3d 758, 771 (W.D. Tex. 2022)). Applying these factors, the court in *Rogers* concluded that the exercise of personal jurisdiction over a TCPA defendant was reasonable because Texas has a strong interest in enforcing its telephone consumer protection laws and because requiring the plaintiff to litigate in the defendant's preferred forum would impose an unnecessary burden. *Id.* The court further observed that enforcement of such laws could be undermined if plaintiffs were routinely forced to travel to defendants' home states to pursue their claims. *Id.* The same considerations apply here, and Defendant has failed to demonstrate that the exercise of personal jurisdiction would be unreasonable.

[23] ECF. No. 3.

[24] *Id.*

Services Inc. is the duly appointed registered agent of Defendant Kings Capital.[25] Thus, Plaintiff effected service under Rule 4(h)(1)(B). Defendant had the opportunity to respond but did not.

### C.       Procedural Propriety

Default judgment against Defendant is procedurally appropriate. There are no material issues of fact at issue in the case, given that Defendant defaulted and filed no responsive pleadings. *Guadian v. United Tax Defense LLC, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024) (*citing *Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("[W]hen a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact." (citation omitted)), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018)). Plaintiff has been prejudiced by the delay in this case due to Defendant's failure to timely answer or otherwise defend the case. As discussed, Defendant failed to timely respond to Plaintiff's complaint, Plaintiff moved for default, and the Clerk of the Court entered default against Defendant. There is no evidence that Defendant's default was caused by a good-faith mistake or excusable neglect. Entry of default judgment against Defendant would not be unduly harsh, given that Defendant has been given notice and opportunity to respond to this action. Further, there is not any basis on which a court would think itself obliged to set aside Defendant's default. Accordingly, all the *Lindsey* factors weigh in favor of entry of default judgment.

---

[25] *Id*.

D.    **Merits**

Plaintiff seeks relief against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and regulations promulgated thereunder, and Texas Business and Commerce Code 302.101.

1.    ***Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)***

Section 227(c)(2) of the TCPA directs the Federal Communications Commission to promulgate regulations protecting consumers' privacy interests, and those regulations are codified at 47 C.F.R. § 64.1200. *See Callier v. Keeping Capital, LLC*, No. EP-21-CV-00011-DCG, 2021 WL 2742766, at *3–4 (W.D. Tex. Apr. 22, 2021). Relevant here, the regulations require telemarketers to maintain internal do-not-call procedures, including a written do-not-call policy available upon demand, training personnel on compliance, and identifying the caller and seller during telemarketing calls. 47 C.F.R. § 64.1200(d)(1), (2), (4). In addition, the regulations prohibit initiating a telephone solicitation to a residential telephone subscriber whose number is listed on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). Section 227(c)(5) creates a private right of action for any person who receives more than one telephone call within a twelve-month period by or on behalf of the same entity in violation of these regulations. 47 U.S.C. § 227(c)(5). Courts in the Fifth Circuit have recognized that a plaintiff adequately states a claim under § 227(c)(5) by alleging repeated calls made without compliant do-not-call procedures or to a number listed on the national registry, and that a defendant's default admits such regulatory violations. *See Callier*, 2021 WL 2742766, at *4–5*.

Although courts have differed on whether a cellular telephone qualifies as a "residential telephone" under § 64.1200(c), there is no binding precedent foreclosing such claims, and courts have held that a cellular number may qualify where the plaintiff alleges it is used for residential

purposes. *See Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at \*2–3 (W.D. Tex. Jan. 12, 2024); *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at \*2–3 (E.D. Tex. June 26, 2023), *report and recommendation adopted*, 2023 WL 4488848 (E.D. Tex. July 12, 2023). Consistent with FCC guidance extending TCPA protections to cellular phones, courts within this Circuit have concluded that such allegations are sufficient to state a claim under § 227(c)(5). *See Guadian*, 2024 WL 140249, at *3* (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039 (2003)).

Similarly, recent TCPA jurisprudence reflects a growing split among district courts regarding whether text messages constitute "telephone calls" subject to the statute's Do-Not-Call provisions under 47 U.S.C. § 227(c). In *Jones v. Blackstone Medical Services, LLC*, the Central District of Illinois dismissed a TCPA class action, holding that § 227(c)'s plain text, which was enacted before the advent of text messaging, does not encompass text messages, notwithstanding prior FCC guidance to the contrary. No. 1:24-cv-01074, 2025 WL 2042764, at \*3–5 (C.D. Ill. July 21, 2025). That court relied heavily on the Supreme Court's recent decisions in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), and *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), which rejected Chevron deference and clarified that district courts are not bound by agency interpretations but must instead apply ordinary tools of statutory construction.

By contrast, other courts continue to hold that § 227(c) applies to text messages. See *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at \*4 (D. Or. July 21, 2025). Further, interpreting § 227(c) to include text messages is consistent with guidance from the Federal Communications Commission ("FCC"). *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at \*3 (N.D. Ill. Nov. 10, 2025) (citing *McLaughlin Chiropractic Assocs., Inc. v.*

*McKesson Corp.*, 606 U.S. 146, 155 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). "The FCC has stated that § 227(b) 'encompass[es] both voice calls and text calls.'" *Sagar v. Kelly Auto. Group, Inc.*, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14115 (2003)). Likewise, the FCC has stated that § 227(c) includes text messages. See *In the Matter of Emanuel "Manny" Hernandez*, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018) (finding that Hernandez violated § 227(c) because it is 'illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the [do-not-call registry and this] prohibition includes both voice calls and text messages.')." *Id.*

Moreover, interpreting § 227(c) to include text messages is consistent with numerous district court decisions. *See, e.g.*, *Sagar v. Kelly Auto Group, Inc.*, 2021 WL 5567408 (N.D. Ill. Nov. 29, 2021); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203 (D. Colo. 2022); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513, at *6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Appellate authority likewise supports this interpretation. *Hudson v. Palm Beach Tan, Inc.* The Ninth Circuit has held that a phone owner or subscriber whose number is listed on the National Do-Not-Call Registry and who receives unsolicited telemarketing text messages has standing under § 227(c). *Id*. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *see also Chennette v. Orkin, LLC*, 50 F.4th 1225, 1229 (9th Cir. 2023) (recognizing § 227(c) claims based on telemarketing texts sent to "residential" cell phone numbers). Other courts have similarly concluded that the receipt of

- 11 -

unsolicited telemarketing text messages constitutes a cognizable injury under the TCPA. *Hudson v. Palm Beach Tan, Inc.,* No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at \*6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024); *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 WL 6693134, at \*6 (W.D.N.C. Nov. 12, 2020).

Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5).

### 2.    *Violation of Texas Business & Commerce Code § 302.101*

Section 302.101 makes it a violation for "a seller" to "make a telephone solicitation ... to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101. Based on a plain reading of the Texas Business and Commerce Code at the time of the conduct arising out of this claim, Chapters 301 and 302 do not apply to text messages. A "telephone solicitor" is defined as one who "makes or causes to be made a consumer telephone call." Tex. Bus. & Com. Code § 301.001(5). Further, "telephone solicitation" is defined as "a telephone *call* a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* at § 302.001(7). Therefore, courts in Texas have also concluded that Chapter 302 does not apply to text messages. *Horton v. MultiPlan Inc.*, No. 3:23-CV-02098-S-BT, 2024 WL 3380236, at \*9 (N.D. Tex. June 7, 2024), *report and recommendation adopted*, No. 3:23-CV-2098-S-BT, 2024 WL 3378719 (N.D. Tex. July 11, 2024); *See Powers*, 2022 WL 2992881, at \*3–4 (noting that while other sections of the Code had been amended to apply to text messages, Chapter 302 had not, and therefore "[u]nder a plain reading of the Code, Chapter 302 does not apply to text messages"); *see also Pepper v. GVG Cap. LLC*, 2023 WL 205297, at \*4–5 (S.D. Tex. Jan. 17, 2023) (concluding

that Chapter 302 did not apply to text messages based on its plain language and *Powers*). Based

on this reasoning, the Court should decline to extend the 302.101 to text messages.[26]

Plaintiff asserts that he is a resident of Texas.[27] Defendant is a seller, since Defendant

ordered that the calls be made on Defendant's own behalf, in order to promote its financial

assistance services. See Tex. Bus. & Com. Code § 302.001(5) ("'Seller' means a person who

makes a telephone solicitation on the person's own behalf."). Plaintiff also asserts that Defendant

is not registered with the Texas Secretary of State, as required by § 302.101.[28] As it is alleged

Defendant made each solicitation in this case without holding a valid Texas Telephone Solicitation

registration, each unlawful solicitation constitutes a separate violation of the chapter, and the

statute provides that a violator is subject to civil penalties of up to $5,000 per violation. 302.302(a).

Accordingly, one telephone solicitation was made to a Texas resident in violation of Chapter 302,

exposing the caller to potential civil penalties of up to $5,000 in total. Because the well-pleaded

factual allegations and submitted evidence amply support that Defendant violated §§ 227(c) of the

TCPA, the Court likewise concludes that Plaintiff's analogous state-law claims clear the minimal

content requirement of Federal Rule of Civil Procedure 8. See *Callier v. Keeping Capital, LLC*,

No. EP-21-CV-00011-DCG, 2021 WL 2742766, at *3–4 (W.D. Tex. Apr. 22, 2021) (holding that

TCPA claims may be supported by detailed factual allegations and evidence establishing statutory

---

[26] Amended by Acts 2025, 89th Leg., ch. 964 (S.B. 140), § 1, eff. Sept. 1, 2025, the Texas Business & Commerce Code defines a telephone solicitation to mean "a call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item," Tex. Bus. & Com. Code § 302.001(7) (2025). Further, the amendment notes that "Telephone call" has the meaning assigned by Section 304.002, which defines a "telephone call" as "a call or other transmission made to or received at a telephone number, including … a call or other transmission, including a transmission of a text or graphic message or of an image, to a mobile telephone number serviced by a provider of commercial mobile service", Tex. Bus. & Com. Code § 304.002(10)(C)(2024). There is nothing in the legislation hat expresses an intent to apply the amendment retroactively. Therefore, text messages clearly count as "telephone solicitations" under the TCBB 302.101 after September 1, 2025.

[27] ECF. No. 1 at 1.

[28] *Id*. at 7.

violations)(citing *Wooten v. Fast Auto Loans*, 788 F.3d 458, 494 (6th Cir. 2015)). As a result, Plaintiff has pleaded a sufficient basis to establish a claim.

### E.    Damages

Plaintiff seeks relief against Defendant under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and regulations promulgated thereunder, and Tex. Bus. & Com. Code 302.101. In determining the amount of damages to be awarded, the Court may rely on declarations and documentary evidence if the amount claimed is capable of mathematical calculation. *See* Fed. R. Civ. P. 55(b)(2)(B). The amount of damages available to Plaintiff is capable of mathematical calculation, and Plaintiff has provided these calculations in his original complaint, Motion for Default Judgment, and attached affidavit.[29]

In his original complaint, Plaintiff requested "[an] award of $1,500 per text in statutory damages arising from the TCPA § 227(c) intentional knowing and willful violations jointly and severally against the corporation and individual for six (6) texts" and "[an] award of $5,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.101 for six (6) texts."[30] Later, in his Motion for Default Judgement, Plaintiff asserted that "…he is entitled to $3,000 for six (6) violations of 227(c) at $500 per call, plus $9,000 for six (6) violations of 227(c) at $1,500 per call, $60,000 for six (6) violations of Tex. Bus. & Com. Code 302.101 at $5,000 per call or text, $405 in filing fees, and $150 in service fees for a total of $72,555."[31]

However, after the Motion for Default Judgement, Plaintiff submitted "Affidavit of Jorge Duron in Support of Default Judgement Request" ("Affidavit") (ECF No. 25.), by which he

---

[29] *See* ECF. No. 1; *See* ECF. No. 15; *See* ECF. No. 25.
[30] ECF. No. 1 at 12.
[31] ECF. No. 15 at 10.

- 14 -

corrected the requested amount to total $13,494.00.[32] Plaintiff came to this new calculation as follows: $5,000 in damages under Tex. Bus. & Com. Code 302.101, $500 in damages for violating TCPA 227(c) for one phone call, $7,500 in damages for "knowing and willful violations" under TCPA 227(c) for five text messages "after DNC request" was issued on March 11, 2025, $405 for filing fees, and $89 for service fees.[33] **The Court has reviewed the evidence and finds that the calculation of damages is consistent with the Plaintiff's claim. The Court recommends Plaintiff be awarded $13,494.00 in damages.**

First, the TCPA authorizes a private right of action under 47 U.S.C. § 227(c)(5) for a person who receives more than one telephone call within a twelve-month period by or on behalf of the same entity in violation of the Commission's Do-Not-Call regulations. 47 U.S.C. § 227(c)(5). A prevailing plaintiff may recover actual damages or statutory damages of $500 for each violation, with treble damages available for willful or knowing violations. 47 U.S.C. § 227(c)(5)(B). Courts have recognized that repeated unlawful calls may give rise to multiple statutory awards under § 227(c). *See Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *6–7 (W.D. Tex. Jan. 12, 2024). Here, the Court recommends awarding $500 for the initial phone call by which the Plaintiff requested to not be contacted, and $7,500 ($1,500 per text message, with a total of five text messages sent) in trebled damages for "knowing and willful violations" under TCPA 227(c).

Second, Texas law provides additional, independent remedies for the same conduct. Chapter 302 of the Texas Business & Commerce Code authorizes a civil penalty of up to $5,000 for each unlawful telephone solicitation, including solicitations made without the required registration under § 302.101. Tex. Bus. & Com. Code §§ 302.101, 302.302(a). Although § 302.101

---

[32] ECF. No. 25
[33] *Id.* at 2.

does not itself create a private right of action, § 302.303 expressly authorizes private enforcement of Chapter 302 violations. Tex. Bus. & Com. Code § 302.303(b); *see also Auguston v. Nat'l Admin. Serv. Co.*, No. 4:21-CV-819-ALM-KPJ, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023), *report and recommendation adopted*, 2023 WL 1802389 (E.D. Tex. Feb. 7, 2023). Courts within this Circuit routinely permit recovery under both § 227(c) and Chapter 302 for the same telemarketing conduct. *See Thomas v. Zenith Solar, LLC*, No. MO:22-CV-00047-DC-RCG, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 202853 (W.D. Tex. Aug. 24, 2022); *Thompson v. Dealer Renewal Servs.*, No. 4:21-CV-0467-P, 2021 WL 5416605, at *3 (N.D. Tex. Nov. 18, 2021). Because each unlawful call is a separate violation, multiple solicitations may support cumulative statutory damages under both § 227(c) and Texas law. Tex. Bus. & Com. Code §§ 302.001(7), 302.002, 302.302(a). Under Texas law, each telephone solicitation constitutes a separate violation, and a violator is subject to civil penalties of up to $5,000 per violation. Tex. Bus. & Com. Code §§ 302.001(7), 302.002, 302.302(a) (2025). Accordingly, placing one call to Plaintiff exposes the sender to $5,000 in Texas civil penalties. *Id*. Therefore, this Court recommends Plaintiff be awarded $5,000 in damages for one call in violation of the TCBB.

Lastly, Plaintiff seeks a total of $494 in filing and service fees.[34] Plaintiff may recover "all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees." Tex. Bus. & Com. Code § 302.302(d). "Court costs" under this provision include the filing fee paid to initiate the action. They also include fees incurred for service of process. Because the entitlement to costs arises under Texas law, Texas authority governs the scope of recoverable court costs. Texas law treats service-of-process fees as taxable

---

[34] ECF. No. 25 at 2.

court costs recoverable in a judgment, regardless of whether service is performed by a public officer or a private process server. *Guadian v. United Tax Defense LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *6–7 (W.D. Tex. Jan. 12, 2024); Michol O'Connor, *O'Connor's Texas Causes of Action* ch. 44, § 2.3.1(2) (2024 ed.). Federal courts applying Texas law have reached the same conclusion. *Id*; *See Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-cv-808-RCL, 2021 WL 3137421, at 16 (W.D. Tex. Feb. 22, 2021). As a result, Plaintiff is entitled to recover $494 in total court costs.

## IV.    CONCLUSION and RECOMMENDATION

For all these reasons, the Court hereby recommends that Plaintiff's Motion for Default Judgment (ECF No. 15) be **GRANTED**. Further, the Court recommends damages be awarded in the amount of $13,494.00.

**So RECOMMENDED and SIGNED this 13th day of January 2026.**

_____
**LAURA ENRIQUEZ**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE**</u>
**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**